IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

DENNIS HANSON,

Plaintiff,

v.

C. JAMERSON, et al.,

Defendants.

Case No. 3:17cv1335-DMS(BLM)

**REPORT AND RECOMMENDATION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION**

**[ECF No. 14]**

This Report and Recommendation is submitted to United States District Judge Dana M. Sabraw pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth below, this Court **RECOMMENDS** that Defendants' motion for summary judgment/summary adjudication be **GRANTED** in part and **DENIED** in part.

## PROCEDURAL BACKGROUND

Plaintiff Dennis Hanson, a state prisoner proceeding *pro se* and *in forma pauperis*, initiated this action on June 29, 2017 when he filed a complaint under the Civil Rights Act, 42 U.S.C. § 1983, against Defendants Daniel Paramo, C. Jamerson ("Jamerson"), T. Rodgers ("Rodgers"), John Doe 1–10, and Jane Doe 1–5. ECF No. 1 ("Complaint"). On September 21,

1

2017, District Judge Dana M. Sabraw issued an order *sua sponte* dismissing Defendant Daniel Paramo and all Doe Defendants pursuant to 28 U.S.C. sections 1915(e)(2)(B)(ii) and 1915A(b)(1). ECF No. 5.

In his complaint, Plaintiff alleges that Defendant Jamerson used excessive force, causing Plaintiff physical pain, and that Defendant Rodgers "conspired with [Jamerson]," subjecting Plaintiff to "physical pain(s) and suffering while assisting [Jamerson] to" injure Plaintiff. Complaint at 2. Plaintiff seeks injunctive relief, monetary damages, and punitive damages. Id. at 7.

On November 28, 2018, Defendants Jamerson and Rodgers filed a motion for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies prior to filing suit. ECF No. 14 at 8 ("MSJ"). In the alternative, Defendants argue that Plaintiff cannot produce evidence for his excessive force claim against Rodgers, and for his retaliation claims against both Defendants. Id. at 8. Finally, Defendants allege their summary judgment motion should be granted based on qualified immunity. Id. On November 29, 2018, the Court issued a Klingele/Rand Notice and an Order setting the briefing schedule for Defendants' summary judgment motion, in which the Court advised Plaintiff of the requirements for opposing Defendants' motion. ECF No. 15. The Court ordered Plaintiff to file any opposition to Defendants' motion on or before January 4, 2019 and Defendants to file any reply to said opposition on or before January 18, 2019. Id. at 2. Because Plaintiff never filed an opposition, Defendants' motion for summary judgment remains unopposed. See generally Dkt.

## **LEGAL STANDARDS**

### **A. *Pro Se* Litigants**

When a plaintiff appears *pro se*, the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). This rule of liberal construction is "particularly important" in civil rights cases. Hendon v. Ramsey, 528 F. Supp. 2d 1058, 1063 (S.D. Cal. 2007) (citing Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992)); see also Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (stating that because "*Iqbal*

2

incorporated the *Twombly* pleading standard and *Twombly* did not alter the courts' treatment of *pro se* filings; accordingly we continue to construe *pro se* filings liberally . . . ." This is particularly important where the petitioner is a *pro se* prisoner litigant in a civil rights matter).

**B. Summary Judgment**

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of demonstrating that summary judgment is proper. Celotex Corp. v. Cartrett, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. Id. at 322–24. The opposing party "may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

A court may not weigh evidence or make credibility determinations on a motion for summary judgment; rather, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Furthermore, in order to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations of fact. Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Instead, the nonmovant must designate which specific facts show that there is a genuine issue for trial. Id.; Anderson, 477 U.S. at 256.

Finally, while Local Rule 7.1(f)(3)(c) allows district courts to grant unopposed motions, a motion for summary judgment cannot be granted based solely on the nonmoving party's failure to oppose. Cristobal v. Siegel, 26 F.3d 1488, 1491, 1494–95, n.4 (9th Cir.1994). The motion for summary judgment may only be granted if "the moving party's papers are sufficient to support the motion and do not on their face reveal a genuine issue of material fact." Baker v. Ensign, 2015 WL 5568044, at *6 (S.D. Cal. Sept. 22, 2015) (citing Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001)).

///
///

17cv1335-DMS(BLM)

## C. Section 1983

Title 42 United States Code section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. See 42 U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 327 (1986). A person acting under the color of law deprives another "of a constitutional right, within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains].'" Preschooler II v. Clark County Sch. Bd. of Trustees, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

## D. Evidence the Court May Consider on Summary Judgment

In evaluating a motion for summary judgment, a court only may consider admissible evidence. See Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002). A party may not create a triable issue of fact merely by presenting argument in its legal memoranda. See S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co., 690 F.2d 1235, 1238 (9th Cir. 1982); see also Estrella v. Brandt, 682 F.2d 814, 819–20 (9th Cir. 1982) (on summary judgment, statements in legal memoranda are not evidence and "do not create issues of fact capable of defeating an otherwise valid summary judgment motion."). However, if a *pro se* plaintiff submits a verified pleading, the court must consider the factual contents of the verified pleading. See Lopez v. Country Ins. & Fin. Serv., 252 Fed. App'x 142, 144 n.2 (9th Cir. 2007) (affirming summary judgment in favor of the defendant where the *pro se* plaintiff "failed to submit any admissible evidence in opposition to the defendants' motion for summary judgment ...," although observing that "[b]ecause [the plaintiff] was representing himself *pro se*, had he signed his pleadings and/or motions under penalty of perjury, the district court would

have been required to treat them as evidence for the purpose of summary judgment); <u>see also</u>

<u>Jones v. Blanas</u>, 393 F.3d 918, 923 (9th Cir. 2004) (considering plaintiff's evidence where plaintiff

"attested under penalty of perjury that the contents of the motions or pleadings are true and

correct"); <u>Harris v. Shelland</u>, 2017 WL 2505287, at *4 (S.D. Cal. June 9, 2017) ("neither an

unverified complaint nor unsworn statements made in the parties' briefs can be considered as

evidence at this [summary judgment] stage"); <u>Barragan v. Flynn</u>, 2017 WL 5070037, at *2 (S.D.

Cal. Nov. 3, 2017) (same).

     In <u>Fraser v. Goodale</u>, the court reversed a grant of summary judgment, holding that the

district court should have considered unsworn, arguably inadmissible statements written by the

plaintiff in a diary. 342 F.3d 1032, 1036–37 (9th Cir. 2003). The Ninth Circuit reasoned that

"[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form.

We instead focus on the admissibility of its contents." <u>Id.</u> The court opined that the contents

of the plaintiff's diary "were mere recitations of events within [the plaintiff's] personal knowledge

and, depending on the circumstances, could be admitted into evidence at trial in a variety of

ways," including through the plaintiff's testimony. <u>Id.</u> Because the contents could be presented

in an admissible form at trial, the court concluded that the diary's contents should have been

considered as part of the summary judgment motion. <u>Id.</u>; <u>see also</u> <u>Rosenfeld v. Mastin</u>, 2013

WL 5705638, *5 (C.D. Cal. Oct. 15, 2013) (considering plaintiff's unsworn statements made in

the third amended complaint and in the opposition because plaintiff "plainly has personal

knowledge of the content of these statements and could present the statements in admissible

form through his own testimony at trial," but not considering plaintiff's speculative statements

regarding a particular claim where there was no indication plaintiff had personal knowledge of

the claim); <u>Wilson v. Med. Servs. Div.</u>, 2017 WL 1374281, at *7 (S.D. Cal. Apr. 13, 2017) (report

and recommendation denied in part on other grounds) (finding that plaintiff failed to show a

triable issue of material fact even after considering plaintiff's opposition to the motion for

summary judgment that was not signed under penalty of perjury) (citing <u>Rosenfeld</u>, 2013 WL

5705638 at *5); <u>Rodriguez v. Airborne Express</u>, 265 F.3d 890, 902 (9th Cir. 2001) (stating that

"this [C]ircuit has held that self-serving affidavits are cognizable to establish a genuine issue of

material fact so long as they state facts based on personal knowledge and are not too conclusory.") (citing <u>United States v. Shumway</u>, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).

In the instant matter, Plaintiff did not oppose Defendants' summary judgment motion and did not provide any evidence contradicting Defendants' evidence. Plaintiff also did not verify his complaint by signing it under the penalty of perjury, so the factual contents may not be considered as evidence. However, to the extent the complaint contains factual statements based on Plaintiff's personal knowledge, the Court will consider those statements. Plaintiff was deposed, and Defendants filed portions of the deposition transcript. <u>See</u> Deposition of Dennis Hanson ("Hanson Depo."). Accordingly, the Court also will consider the factual statements made by Plaintiff in the deposition transcript.

## COMPLAINT ALLEGATIONS AND DEPOSITION TESTIMONY

While Plaintiff's complaint states no factual allegations against Jamerson or Rodgers, it incorporates by reference allegations Plaintiff made in his Inmate Appeal Form regarding the alleged incident at issue in this matter.[1]  <u>See</u> Complaint at 9–16.  Plaintiff states that on September 11, 2015, he told Correctional Officer Jamerson that there "may be a man down" in another cell, and that Jamerson replied "I don't give a fuck." <u>Id.</u> at 9, 15; <u>see also</u> Hanson Depo. at 9–11. Plaintiff claims he responded to Jamerson that he was "not going to let this go" and "[y]ou can't just ignore a man down." Complaint at 15; Hanson Depo. at 12. Plaintiff states that he also called Jamerson "a piece of shit" at this time. Hanson Depo. at 11. Plaintiff alleges that as he began to walk to his cell, Jamerson stated, "take it to your cell punk" and rushed to Plaintiff. Complaint at 15; <u>see also</u> Hanson Depo. at 11–13. In response, Plaintiff claims he asked Jamerson "are you going to get off on me?" Complaint at 15; <u>see also</u> Hanson Depo. at

---

[1] "A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Furthermore, even if no document is attached to a complaint, incorporation by reference can occur "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003) (citing <u>Van Buskirk v. CNN, Inc.</u>, 284 F.3d 977, 980 (9th Cir. 2002)); <u>Branch v. Tunnell</u>, 14 F.3d 449, 453–54 (9th Cir.1994), <u>overruled on other grounds by</u> <u>Galbraith v. County of Santa Clara</u>, 307 F.3d 1119 (9th Cir. 2002)). Here, Plaintiff's factual allegations are asserted through the Inmate Appeal Form. <u>See generally</u>, Complaint.

13.  Plaintiff alleges Jamerson then got in front of him, "so close [that] his shock vest was pushing against [Plaintiff's] chest area and [Jamerson] said 'you get off.'"  Complaint at 15; see also Hanson Depo. at 13–14.  Plaintiff alleges that at this point, he turned away from Jamerson, took about two steps, and "Jamerson rushed up, grabbed [him] by the neck and [his] mobility impaired vest and shirt collar and started shoving" Plaintiff back and forth "so violently [that Plaintiff's] cane flew out of [his hand]."  Complaint at 15; see also Hanson Depo. at 14–15.  Plaintiff alleges that Jamerson then struck him "with a closed fist on [his] left cheek just under his left eye," which knocked his glasses "into [Plaintiff's] left eye and off [his] face."  Complaint at 16; see also Hanson Depo. at 18–19.  Plaintiff alleges that because he was shaken so violently, he "was knocked off balance [and] two correctional officers took [him] by the arms and laid him to the floor . . . ."  Complaint at 16; Hanson Depo. at 15–16.

Once on the floor, Plaintiff claims that "Jamerson continued to use excessive force on [him] with no resistance from [Plaintiff]."  Complaint at 16.  Plaintiff asserts that Jamerson "[k]ept trying to cuff [Plaintiff's] hands behind [his] back" but Plaintiff's shoulders would not rotate enough to allow that.  Id. at 10; see also Hanson Depo. at 20, 22.  Plaintiff alleges that Jamerson was "rising up and down" on his back, which put pressure on Plaintiff's chest and kept air from getting into Plaintiff's lungs.  Complaint at 10; Hanson Depo. at 22.  Plaintiff further claims he has a severe back injury and that he was trying to explain that, but Jamerson continued "yelling for [Plaintiff] to put [his] hands behind [his] back."  Complaint at 10.  Plaintiff alleges that at this point, he could not breathe "enough air to talk" and when Plaintiff attempted to do so, Jamerson would say "shut the fuck up."  Id.  Plaintiff also claims that he told Jamerson his shoulders were frozen, but that "Jamerson continued to try and force [Plaintiff's] arms back and behind [him]," causing Plaintiff "extreme pain that still exist[s] to this day."  Id. at 13; see also Hanson Depo. at 20–22.  Plaintiff further alleges that while pinned to the floor, he informed Jamerson that he has Chronic Obstructive Pulmonary Disease ("COPD"), and that "sitting on [his] back was cutting off [his] air and making it very difficult [for Plaintiff] to breathe."  Complaint at 13.

17cv1335-DMS(BLM)

Plaintiff contends he was next approached by correctional officer Rodgers, who responded from another building.  Id. at 10, 13.  Plaintiff alleges that Rodgers kneeled down "approximately one foot from [Plaintiff's] face with a can of pepper spray and asked [Plaintiff], 'Do you want some of this?'"  Id. at 13.  Plaintiff claims that he warned Rodgers not to spray because given Plaintiff's lung disease, the pepper spray could kill him.  Id.  Plaintiff alleges that Jamerson told Rodgers to "let the Fucker have it."  Id. at 14; see also Hanson Depo. at 23.  Allegedly, Rodgers then brought the pepper spray just inches away from Plaintiff's face and "gave [him] a full blast."  Complaint at 14; see also Hanson Depo. at 23–24.  On a different page of the complaint, Plaintiff alleges that Rodgers "sprayed [him] with a three second burst."  Complaint at 14.  Plaintiff states that Rodgers discharged the "pepper spray directly into [his] mouth" and that it "went down his throat and up his nose, instantly cutting off his oxygen" and after that, everything went black.  Id.; see also Hanson Depo. at 24.  Plaintiff asserts that he "thought [he] was going to die."  Complaint at 14.

At this point, Plaintiff claims he "was cuffed in the front[,] lifted and taken outside, still not able to breath[e]."  Id. at 10.  Plaintiff alleges that "[t]he ambulance arrived and they put him on oxygen . . . ;" he was then was transferred to a "Medical Emergency Room, placed on oxygen," and "administered [his] emergency inhaler[2] to open [his] airway and restore [his] breathing."  Id. at 10, 14; see also Hanson Depo. at 27–29.

## DISCUSSION

Plaintiff appears to be raising three claims for relief. See Complaint at 3–5.  First, Plaintiff alleges that Defendants used excessive force in violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.  Id. at 3.  Second, Plaintiff alleges violations of his First Amendment right to free speech, likely based on a retaliation claim.  Id.  Third, Plaintiff alleges that his Due Process rights were violated by the "CDCR staff" in the processing of

---

[2] Plaintiff claims he was administered Xopenex, Asmanex, and Atrovent to restore his breathing. Complaint at 14; see also Hanson Depo. at 28–29.

8

Plaintiff's appeal.  Id.  at 4–5.  Plaintiff seeks declaratory relief, as well as monetary, compensatory, and punitive damages, and any further relief the Court deems proper.  Id. at 7.

Defendants' summary judgment motion asserts that Plaintiff: (1) failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act; (2) cannot produce evidence for excessive force as to Defendant Rodgers; (3) cannot produce evidence for retaliation against either Defendant; (4) cannot hold either Defendant liable for failing to process Plaintiff's appeal; and (5) cannot prevail because Defendants are protected by qualified immunity.  MSJ at 16, 18, 21–22, 24.

## A. Exhaustion Under the Prison Litigation Reform Act

Defendants claim that Plaintiff failed to exhaust his administrative remedies by failing to attach a "'Rights and Responsibilities Statement' to his appeal," and by not resubmitting the appeal in a timely manner.  Id. at 24.  The proper vehicle for challenging a complaint based on failure to exhaust administrative remedies is a motion for summary judgment under Federal Rule of Civil Procedure ("FRCP") 56.  Albino v. Baca, 747 F.3d 1162, 1168 (9th Cir. 2014) (overruling Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) (holding that the proper procedural device for defendants to raise an exhaustion defense was an FRCP 12(b)(6) motion to dismiss).  "If under the Rule 56 summary judgment standard, the court concludes that Plaintiff has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice."  Wells v. Kyte, 2014 WL 3058361, *2 (E.D. Cal. July 3, 2014) (citing Wyatt, 315 F.3d at 1120), overruled on other grounds by Albino, 747 F.3d 1162.

### 1. The Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") of 1995 provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available, are exhausted.

42 U.S.C. § 1997e(a).  "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits."  Porter v. Nussle, 534 U.S. 516, 524 (2002).  The United States

Supreme Court has confirmed that exhaustion is a mandatory prerequisite to filing suit in federal court. Id. Failure to exhaust may not be waived. See Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("[e]xhaustion is no longer left to the discretion of the district court"). The United States Supreme Court has stated that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007).

To prevail on a motion for summary judgment, the defendant must prove that the plaintiff failed to properly exhaust available administrative remedies. Albino, 747 F.3d at 1172; see also Jones, 549 U.S. at 216 (inmates are not required to specifically plead or demonstrate exhaustion in his or her complaint because failure to exhaust is an affirmative defense under the PLRA). The defendant cannot demonstrate an absence of exhaustion unless some relief remains available. Brown v. Valoff, 422 F.3d 926, 936–37 (9th Cir. 2005). Therefore, the defendant must produce evidence that the plaintiff did not properly exhaust a remedy that is available as a practical matter in that it must be capable of use or at hand. Albino, 747 F.3d at 1171.

Once the defendant meets that burden, the plaintiff must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. at 1172. The Ninth Circuit has consistently held that administrative remedies were unavailable where the inmate was thwarted by affirmative misconduct or obstruction by prison officials. See Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010) (screening out an inmate's administrative grievance for improper reasons rendered administrative remedies unavailable) superseded by statute on other grounds as stated in Avery v. Paramo, 2015 WL 4923820, at n.14 (S.D. Cal. Aug. 18, 2015); see also Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) (a prison warden's mistake in misdirecting the inmate rendered administrative remedies unavailable). However, an inmate who did not make any attempt to properly utilize the prison grievance system cannot sidestep the exhaustion requirement by arguing that it now would be futile to attempt to exhaust within the prison system. Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[W]e stress the point … that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has

provided otherwise."); see also Woodford, 548 U.S. at 83–84, 100 (explaining that the PLRA exhaustion requirement is not satisfied if the inmate files an "untimely or otherwise procedurally defective . . . appeal," and "if the party never pursues all available avenues of administrative review, the person will never be able to sue in federal court").

Accordingly, "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with applicable procedural rules,'" defined by the specific prison grievance process in question. Jones, 549 U.S. at 218 (2007) (quoting Woodford, 548 U.S. at 88). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 548 U.S. at 90–91. This requirement serves PLRA's purpose because it "gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." Id. at 94. Therefore, an inmate incarcerated in CDCR must comply with all the regulations and procedures of California's prison administrative appeals system to properly exhaust his claim. See Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (citation omitted) ("[t]he California prison system's requirements 'define the boundaries of proper exhaustion'" for inmates suing in California).

### 2. California Regulations

To properly exhaust available remedies for an administrative decision or perceived mistreatment in California, an inmate must proceed through three formal levels of review. See Cal Code Regs. tit. 15, §§ 3084.1–3084.9. The three levels include: "(1) a first level appeal, to be conducted by the division head or his or her designee;" "(2) a second level appeal, to be conducted by the hiring authority or his or her designee; and (3) a third level appeal, to be conducted by the Office of Appeals in Sacramento, California (formerly the Inmate Appeals Branch)." Jones v. Paramo, 2013 WL 4517829, at *6 (S.D. Cal. Aug. 19, 2013); Cal. Code Regs. tit. 15, §§ 3084.1, 3084.7. "The third level review constitutes the decision of the Secretary of the California Department of Corrections and Rehabilitation on an appeal" and "exhausts administrative remedies." Cal. Code Regs. tit. 15, § 3084.7(d)(3).

17cv1335-DMS(BLM)

The inmate must submit his or her appeal "within 30 calendar days of: (1) The occurrence of the event or decision being appealed, or; (2) Upon first having knowledge of the action or decision being appealed, or; (3) Upon receiving an unsatisfactory departmental response to an appeal filed." Id. § 3084.8(b). Any prisoner complaint alleging staff misconduct must be accompanied by a "Rights and Responsibility Statement." Id. § 3084.1(i)(1). "Failure to attach all necessary supporting documents may result in the appeal being rejected . . . . and [t]he appellant shall be allowed an additional 30 days to secure any missing supporting documents and resubmit the appeal." Id. § 3084.3. An appeal may also be cancelled if it is untimely. Id. § 3084.6(c)(4). Once cancelled, the appeal shall not be accepted unless a determination is made that the cancellation was made in error or new information is received making the appeal eligible for further review. Id. §§ 3084.6(a)(3), 3084.6(e). A cancellation does not exhaust an appeal, though a cancellation at the third level may itself be appealed. Id. §§ 3084.6(e).

The inmate may initiate litigation in federal court "only after the administrative process ends and leaves his grievances unredressed." Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006). "Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602 …, and addressed through all required levels of administrative review up to and including the third level." Cal Code Regs. tit. 15, § 3084.1(b).

### 3. Evidence

Defendants submitted declarations from B. Self, the Appeals Coordinator at RJD, and M. Voong, the Chief of the Office of Appeals, to establish that Plaintiff had access to an administrative process and failed to exhaust the available administrative remedies. See ECF No. 14-2, Declaration of M. Voong ("Voong Decl."); ECF No. 14-3, Declaration of B. Self ("Self Decl."). B. Self describes the administrative grievance process that was available to Plaintiff at RJD, including that RJD records "are kept in the ordinary course of business at or near the time that the [Inmate Appeals Office ("IAO")] receives an inmate appeal." Self Decl. at 3. B. Self explained that the California Attorney General's Office requested that IAO search its files and records for any appeals related to Plaintiff's allegations of excessive force against Jamerson and

17cv1335-DMS(BLM)

Rodgers, dating back to September 11, 2015.  Id.  RJD records revealed that on October 15, 2015, the IAO received and accepted for review Plaintiff's appeal, log number RJD-15-03603 ("October 2015 Appeal").  Id.  A thorough search of the records revealed that appeal log number RJD-15-03603 was the only appeal the IAO received from Plaintiff "against Jamerson and Rodgers relating to an allege[d] use of force on Plaintiff on September 11, 2015."  Id.  Plaintiff's October 2015 Appeal was bypassed[3] at the first level of review, and "[o]n December 4, 2015, the IAO issued a memorandum notifying Plaintiff that the due date on the appeal had been extended due to the complexity of the decision, action, or policy."  Id. at 3, Ex. A.

In a memorandum dated December 30, 2015, Plaintiff was notified of the second level review response for his October 2015 Appeal.  Id.  The memorandum informed Plaintiff that his appeal had been processed as an "Appeal Inquiry," that the inquiry was complete, and that upon review of all issues, investigative authorities found that RJD staff "did not violate CDCR policy."  Id. at Ex. A.  The memorandum further informed Plaintiff that if he "wish[ed] to appeal the [second level] decision and/or exhaust administrative remedies," he was required to "submit [his] staff complaint appeal through all levels of appeal review," including the third level.  Id.  Finally, Plaintiff was informed that "[o]nce a decision ha[d] been rendered at the Third Level, administrative remedies w[ould] be considered exhausted."  Id.

M. Voong states that he is "personally familiar with the record-keeping system at the Office of Appeals and [he] is able to verify the status of a California inmate or parolee's third-level administrative appeals."  Voong Decl. at 2.  M. Voong declares that "[t]he Office of Appeals receives and maintains all inmate appeals . . . accepted for the third level review for all non-medical appeals, the third and final level of review in CDCR's inmate-appeals process for all non-medical appeals, and renders decisions on such appeals."  Id.  M. Voong further explains that

---

[3]  "All appeals shall be initially submitted and screened at the first level unless the first level is exempted."  Cal Code Regs. tit. 15, § 3084.7(a).  An appeals coordinator "may bypass the first level of appeal of: (1) A policy, procedure or regulation implemented by the department. (2) A policy or procedure implemented by the institution head. (3) An issue that cannot be resolved at the division head level such as Associate Warden, Associate Regional Parole Administrator, CALPIA manager or equivalent. (4) Serious disciplinary infractions."  Id. § 3084.7(a)(1–4).

17cv1335-DMS(BLM)

"[u]pon receipt by the Office of Appeals, appeals are logged into a computer database known as the Inmate Appeals Tracking System (IATS)." <u>Id.</u>

M. Voong declares the Office of the Attorney General requested that the Office of Appeals search its records to locate all third-level appeals submitted by Plaintiff, "pertaining to an alleged use of excessive force by Officers Jamerson and Rodgers on September 11, 2015." <u>Id.</u> at 3. M. Voong explains that a thorough search of the records (by his staff) revealed that the Office of Appeals received Plaintiff's October 2015 Appeal (for third level review) on February 11, 2016. <u>Id.</u> at 3. On April 25, 2016, Plaintiff's October 2015 Appeal was screened out (or rejected) because the appeal was missing the required CDCR Form 1858, Rights and Responsibility Statement. <u>Id.</u> at 3–4. On April 27, 2016, Plaintiff was mailed a notice informing him that his appeal had been rejected "pursuant to California Code of Regulations, Title 15, Section 3064.6(b)(7)." <u>Id.</u> at Ex. B. The letter clearly explained that Plaintiff's appeal was missing the CDRC Form 1858, Rights and Responsibility Statement. <u>Id.</u> at Ex. B. The letter also advised Plaintiff that he "should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3064.8(b)." <u>Id.</u> The letter further warned that "once the appeal has been cancelled, that appeal may not be resubmitted," but Plaintiff would be permitted to appeal a future cancellation decision. <u>Id.</u>

"On October 25, 2016, 181 days after" Plaintiff was mailed the notice of rejection, the Office of Appeals received Plaintiff's resubmission of his October 2015 Appeal, along with the required Rights and Responsibility Statement. <u>Id.</u> at 4. On January 17, 2017, Plaintiff's October 2015 Appeal was cancelled "due to time constraints . . . [and] in accordance with Cal. Code Regs. tit. 15, §3084.6(c)(10)." <u>Id.</u> On January 23, 2017, Plaintiff sent a CDCR Form 22 to the Office of Appeals, requesting the status of his October 2015 Appeal. <u>Id.</u> The Office of Appeals received Plaintiff's inquiry on January 27, 2017 and responded on January 31, 2017 with "information on how to appeal the cancellation of an appeal." <u>Id.</u> Plaintiff appealed the cancellation of his October 2015 Appeal, and the Office of Appeals received the cancellation appeal on February 1, 2017 and assigned log number OOA-15-08970 ("Appeal of Cancellation"). <u>Id.</u> at 3.

On April 4, 2017, the Office of Appeals denied Plaintiff's Appeal of Cancellation at the third level of review.  Id.  The April 4, 2017 notice of denial informed Plaintiff that his Appeal of Cancellation was denied because Plaintiff failed to timely "correct and return his rejected [October 2015 Appeal] within 30 calendar days of the rejection," and Plaintiff's Appeal of Cancellation provided no "new information which may have allowed his cancelled appeal to be eligible for further review."  Voong Decl. at Ex. A.

### 4.  Analysis

An inmate must submit his grievance within thirty (30) calendar days of the occurrence of the event being appealed.  See Cal. Code Regs. tit. 15, § 3084.8(b); see also Self Decl. at 2–3; Voong Decl. at 2–3.  Here, the record establishes that Plaintiff did not timely re-submit his October 2015 Appeal at the third level of review after it was rejected for failure to attach a Rights and Responsibility Statement.  The record further establishes that the rejection letter warned Plaintiff that he must comply with the time constraints specified in the California Code of Regulations, sections 3084.6(a) and 3064.8(b).  Despite the written warning, Plaintiff waited roughly six months to cure the identified deficiencies.  Because the submission was untimely, Plaintiff's appeal was cancelled.  Although Plaintiff challenged the cancellation, the cancellation was upheld.  As a result, the undisputed evidence establishes that Plaintiff failed to exhaust his administrative remedies.  See Draper v. Garcia, 2017 WL 2189751, at *2 (E.D. Cal. May 18, 2017) (granting defendant's motion for summary judgment where prisoner failed to attach "Rights and Responsibilities Statement" with his third level appeal and did not resubmit said appeal in a timely manner, or otherwise).

The Court finds that Defendants have satisfied their initial burden of establishing that Plaintiff did not submit a timely appeal through the prison system for his Eighth Amendment excessive force claim against Jamerson and Rodgers and therefore, Plaintiff did not exhaust his available administrative remedies as to that claim.  However, Plaintiff's failure to exhaust administrative remedies for both his First Amendment and Due Process claim was not addressed in the evidence presented.  While B. Self and M. Voong's declarations state that a thorough search of the records was performed for appeals by Plaintiff alleging excessive force against

17cv1335-DMS(BLM)

Jamerson and Rodgers, neither declaration indicates whether a records search was performed for any First Amendment or Due Process claims made by Plaintiff. See Self Decl. at 3, Voong Decl. at 3. Therefore—as to the excessive force claim only—the burden of production shifts to Plaintiff and he must "come forward with evidence showing" either that he properly exhausted all available administrative remedies before filing suit, or that "there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Albino, 747 F.3d at 1172); Jones, 549 U.S. at 218. Plaintiff has made no such showing. Accordingly, the Court **RECOMMENDS** that Defendants' motion for summary judgment based upon Plaintiff's failure to exhaust the administrative remedies be **GRANTED** as to Plaintiff's Eighth Amendment excessive force claim against Jamerson and Rodgers but **DENIED** as to Plaintiff's First Amendment and Due Process claims.

### B. Excessive Force Claim

Alternatively, Defendants move for summary judgment on the Eighth Amendment excessive force claim against Defendant Rodgers on the basis that there is no evidence to support the claim. MSJ at 16–18.

#### 1. Legal Standard

The Eighth Amendment prohibits prison officials from using excessive physical force against inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1992). The inquiry is not whether the prisoner suffered a certain level of injury, but "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (citation omitted); Hamilton v. Brown, 630 F.3d 889, 897 (9th Cir. 2011); see Farmer, 511 U.S. at 835–36 (noting that a plaintiff must allege that the defendant used force knowing that harm would occur). Courts examine the following five factors to determine whether a plaintiff has satisfied the malicious and sadistic standard: (1) the inmate's injury; (2) the need for the use of force; (3) "'the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible prison officials; and (5) any efforts made to temper the severity of a forceful response.'" Martinez v. Stanford, 323 F.3d

1178, 1184 (9th Cir. 2003) (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992)); <u>see also</u> <u>Whitley</u> <u>v. Albers</u>, 475 U.S. 312, 321 (1986); <u>Madrid v. Gomez</u>, 889 F.Supp. 1146, 1247 (N.D. Cal. 1995). "The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis." <u>Nunez v. Ramirez</u>, 2011 WL 7096611, at *7 (S.D. Cal. Nov. 14, 2011) (citing <u>Hudson</u>, 503 U.S. at 7). "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." <u>Hudson</u>, 503 U.S. at 4. "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." <u>Wilkins</u>, 559 U.S. at 38.

### 2. Evidence

Defendants claim that Plaintiff cannot produce facts establishing that Rodgers is liable for using excessive force. MSJ at 16. Defendants argue that "Rodgers acted to restore discipline while Hanson was resisting Jamerson's efforts to control him." <u>Id.</u> Rodgers explains that he did not see how the altercation between Jamerson and Plaintiff began and that when he arrived, Rodgers only saw Plaintiff "struggling with Jamerson," who "was trying to get [Plaintiff] to the ground." ECF No. 14-5, Declaration of T. Rodgers ("Rodgers Decl.") at 1–2. Rodgers declares that "[Plaintiff] was resisting" Jamerson's efforts to get Plaintiff to the ground and put him into cuffs. <u>Id.</u> at 2. Rodgers further declares that he "approached the altercation and ordered [Plaintiff] to get down on the ground [but that] [Plaintiff] did not comply." <u>Id.</u> Rodgers states that he then "grabbed [Plaintiff's] left hand and helped Officer Jamerson take [Plaintiff] to the ground." <u>Id.</u> Once on the ground, Rodgers states that Plaintiff "continued to resist by twisting his body and rolling [from] side to side," and that Plaintiff positioned his hand in a way that Jamerson could not cuff him. <u>Id.</u> Rodgers declares that while holding his O.C. spray ("pepper spray"), he "ordered [Plaintiff] to stop resisting and submit to handcuffs." <u>Id.</u> When Plaintiff refused to comply, Rodgers "shot one three-second burst of [pepper] spray from approximately three feet away into [Plaintiff's] facial area." <u>Id.</u> Rodgers states he "used only the force necessary to assist Officer Jamerson in getting control of [Plaintiff]." <u>Id.</u>

Defendants argue that Rodgers' use of pepper spray was reasonable because Rodgers saw Plaintiff and Jamerson "struggling on the ground," Plaintiff had only one hand cuffed, and Plaintiff was not complying with Jamerson's orders to cuff the other hand.  MSJ at 17.  Furthermore, when Rodgers sprayed Plaintiff with the pepper spray, he did so "to allow Jamerson to get ahold of [Plaintiff]."  Id.  Defendants argue that the force applied was "necessary to get [Plaintiff] to comply with Jamerson's orders" and therefore, restore discipline.  Id. at 18.  Finally, Defendants argue that Plaintiff suffered no long-term injury from Rodgers discharging the pepper spray into his mouth, and that Plaintiff only received a scrape on his elbow.  Id. at 17–18.

### 3. Analysis

To prevail on summary judgment, Defendants must establish that there is no genuine issue of material fact that Rodgers did not use the pepper spray in a malicious or sadistic manner when he sprayed Plaintiff.  Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002).  Here, when viewing the evidence in the light most favorable to Plaintiff, there remain genuine disputes as to the material facts and circumstances surrounding Rodgers' use of pepper spray.  In his complaint, Plaintiff contends that he told Rodgers of his lung disease diagnosis, COPD, and that because of this disease, the "pepper spray . . . could possibly kill [him]."  Complaint at 10, 13.  Plaintiff further alleges that after he told Rodgers of the lung disease, Jamerson told Rodgers to "let the Fucker have it," after which Rodgers sprayed "a full blast of pepper spray directly into [Plaintiff's] mouth and down his throat . . . ."  Id.  at 14.

The existence of such a disease, Rodgers' alleged knowledge of the disease and the resulting possibly lethal consequence of using the pepper spray, and Rodgers' decision to use the pepper spray rather than using a different type of force to restore discipline creates a genuine issue of fact as to whether the pepper spray use was applied in good faith to restore discipline or maliciously and sadistically to cause harm.  Jamerson's comment "let the Fucker have it" followed by Rodgers' immediate use of the pepper spray compounds the factual dispute as to whether the force was reasonable or malicious.  See Hudson, 503 U.S. at 8–9 (explaining that if a prisoner shows the use of force was applied in a "malicious and sadistic" manner, there

18

is no need to prove a significant physical injury or extreme deprivation). Finally, there is a dispute as to the amount of pepper spray that Rodgers discharged. While Rodgers claims that he sprayed Plaintiff with one, three second burst of pepper spray, Plaintiff described it as a "full blast of pepper spray" that was "sprayed for a while," before Plaintiff "blacked out." As a result, there is a genuine dispute as to whether the amount of pepper spray discharged was reasonable. Complaint at 14; Hanson Depo. at 23–24; see also Furnace v. Sullivan, 705 F.3d 1021, 1026 (9th Cir. 2013) (holding that "the quantity of pepper spray discharged by the officers is unquestionably material, because the amount of force used is central to a claim sounding in the alleged use of excessive force.")

While Rodgers' use of force may have been a reasonable effort to restore discipline, Plaintiff's deposition testimony and potential trial testimony creates a genuine dispute as to whether the force was malicious and sadistic. See Furnace, 705 F.3d at 1026–27 (reversing a grant of summary judgment when the Court was "unable to reconcile" the officers' and prisoner's testimony as to the officers' use of pepper spray on the prisoner). Accordingly, the Court **RECOMMENDS** that Defendants' motion for summary judgment on the basis that there is no genuine issue of fact as to Rodgers' alleged use of excessive force be **DENIED**.

### C. Retaliation Claim

In Claim One, Plaintiff identifies the constitutional violation as "Eighth Amendment, First Amendment Cruel and Unusual Punishment/Free Sp[ee]ch." Complaint at 3. The supporting facts detail Plaintiff's excessive force claim but do not address the First Amendment Free Speech aspect of the claim. Id. at 9–16. Plaintiff did not oppose Defendants' motion, so the Court does not know what type of First Amendment violation Plaintiff is alleging. However, because Plaintiff is proceeding *pro se*, the Court will interpret the claim liberally as alleging a retaliation claim against Defendants Jamerson and Rodgers and address whether there is a genuine issue of material fact with regards to a retaliation claim.

#### 1. Legal Standard

A retaliation claim requires proof of the following elements: (1) Defendants took adverse action against Plaintiff (2) because of (3) Plaintiff's protected conduct, and that such action (4)

chilled the exercise of Plaintiff's First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. Watison v. Carter, 668 F.3d 1108, 114–15 (9th Cir. 2012); see also Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005). Plaintiff bears the burden of showing that his "protected conduct was the 'substantial' or 'motivating' factor behind the defendant's conduct." Rodgers v. Rivas, 2011 WL 13193170, at *3 (S.D. Cal. Feb. 9, 2011) (quoting Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009)) (citing Sorano's Gasco, Inc. v. Morgan, 874 F. 2d 1310, 1314 (9th Cir. 1989)).

### 2. Defendants' Argument

Defendants argue that Plaintiff set forth no evidence to support a retaliation claim against either Jamerson or Rodgers. MSJ at 18. First, Defendants argue that Plaintiff's alleged attempts to alert Jamerson to a "man down" do not constitute protected speech under the First Amendment, so Defendants' response to the statements cannot support a retaliation claim. Id. at 20. Second, Defendants acknowledge that Plaintiff's use of the prison's grievance procedures is protected conduct, but they argue that there is no evidence that either Defendant took adverse action against Plaintiff "because of" his protected conduct of filing a grievance. Id. at 18. Furthermore, Jamerson and Rodgers both declare that they "did not use force because [they were] retaliating against Plaintiff." Jamerson Decl. at 3; Rodgers Decl. at 2. Instead, Jamerson claims that he "used the force" in an effort get "[Plaintiff] to comply with [his] orders and to protect [him]self, the other officers, and inmates." Jamerson Decl. at 3. Rodgers alleges that he "used only the force necessary to assist Officer Jamerson in getting control of Hanson," and that he "never had a previous incident or encounter with [Plaintiff]." Rodgers Decl. at 2.

### 3. Whether Plaintiff's Alleged Statement(s) Constituted Protected Speech

Plaintiff told Jamerson that "this may be a man down" and "[y]ou can't just ignore a man down." See Complaint at 15; Hanson Depo at 12–13. When Jamerson allegedly responded "I don't give a fuck," Plaintiff then claimed that he was "not going to let this go," and called Jamerson "a piece of shit." Complaint at 15; Hanson Depo. at 11.

While the First Amendment protects a wide range of activity in the prison context, including the right to file grievances against prison officials, see Bruce v. Ylst, 351 F.3d 1283,

1288 (9th Cir. 2003), protests and complaints that involve a direct confrontation with prison officials, such as Plaintiff's confrontation with Jamerson, enjoy limited constitutional protection, given that such behavior may present the danger of a disturbance.  <u>See, e.g.</u>, <u>Lockett v. Suardini</u>, 526 F.3d 866, 874 (6th Cir. 2008) (prisoner's act of calling hearing officer a "foul and corrupted bitch" not protected speech); <u>Smith v. Mosley</u>, 532 F.3d 1270, 1277 (11th Cir. 2008) (a prisoner's "false and insubordinate remarks" are not protected speech); <u>Nunez v. Ramirez</u>, 2010 WL 1222058, at *5–6 (S.D. Cal. Mar. 24, 2010) (explaining that challenging or confrontational speech of an inmate directed toward a correctional officer is not afforded First Amendment protection); <u>Garrido v. Coughlin</u>, 716 F.Supp. 98, 99-101 (S.D.N.Y. 1989) ("verbal confrontation" of officers over their treatment of another inmate is not protected conduct); <u>Riggs v. Miller</u>, 480 F.Supp. 799, 804 (E.D. Va. 1979) ("bickering, argumentative conversation" does not rise to the "lofty position of constitutionally protected speech"); <u>Durkin v. Taylor</u>, 444 F.Supp. 879, 881–83 (E.D. Va. 1977) (statement that "I am tired of chickenshit rules" is not protected speech); <u>Craig v. Franke</u>, 478 F.Supp. 19, 21 (E.D. Wis. 1979) (accusation that prison official was drunk is not protected speech).  Because the speech at issue in this case is not afforded First Amendment protection, it also cannot serve as a basis for Plaintiff's retaliation claim.

### 4.  Whether Defendants' Alleged Conduct Constituted Retaliation

Retaliation requires that Defendants took adverse action against Plaintiff "because of" Plaintiff's protected conduct.  <u>Watison</u>, 668 F.3d at 114–15.  Assuming the protected conduct in this case is Plaintiff's use of the prison grievance system, there is no evidence to support a claim that either Defendant took adverse action against Plaintiff after he filed his 602 grievance. Neither Defendant was involved in deciding the grievance.  Jamerson Decl. at 2; Rodgers Decl. at 2; Complaint at 9–10, 12–16.  Plaintiff does not present any evidence in his complaint or deposition to support a finding that there was an adverse action.  <u>See generally</u> Complaint; Hanson Depo.  In fact, Plaintiff acknowledged that he had never been in an argument or altercation with Jamerson or Rodgers either before or after the September 11, 2015 incident. Hanson Depo. at 5–6, 45–46.

///

17cv1335-DMS(BLM)

Plaintiff's complaint does not explain the basis or scope of his First Amendment claim. The only verbal statements made by Plaintiff prior to the altercation are not constitutionally protected speech and cannot support a retaliation claim. Furthermore, there is no allegation or evidence to support a claim that Defendants took adverse action against Plaintiff "because of" his protected conduct of filing a grievance. Because Plaintiff's claim does not involve protected speech and the evidence as to retaliation presents no genuine dispute as to any material fact, the Court **RECOMMENDS** that Defendants' motion for summary judgment as to Plaintiff's First Amendment claim against Jamerson and Rodgers be **GRANTED**.

### D. Due Process Claim

In Count Three, Plaintiff sets forth a Due Process claim asserting that "the CDCR staff" processed Plaintiff's 602 complaint and subsequent appeals improperly or unconstitutionally. Complaint at 5. Plaintiff does not identify the specific members of "the CDCR staff" who allegedly committed these violations. Id. Plaintiff's complaint named three individual Defendants and fifteen (15) Doe Defendants. Id. at 1. Because Judge Sabraw, in September 2017, dismissed all of the Defendants except Defendants Jamerson and Rodgers, this claim only can survive summary judgment if there is a genuine issue of material fact as to whether Jamerson or Rodgers engaged in the allegedly unconstitutional conduct.

Plaintiff's complaint does not mention either Jamerson or Rodgers with regard to this Due Process allegation. Id. at 5, 23–27. Moreover, Plaintiff's description of the Defendants identifies Defendants Jamerson and Rodgers as using excessive force and the Doe Defendants as being "State Employee at CDCR." Id. at 2. None of the Defendants are described as committing a Due Process violation. Id. The Court has reviewed the filed portions of Plaintiff's deposition and they do not provide any evidence or facts to support Plaintiff's Due Process claim. See generally Hanson Depo. Defendants Jamerson and Rodgers both declare that "[o]ther than the interview, [they] [were] not involved in the processing, screening, or ruling on [Plaintiff's] prison appeals regarding this incident." Jamerson Decl. at 2; Rodgers Decl. at 2. The Court has reviewed the 602 grievance and appeals filed in this case and finds that they support Defendants' declarations. Because there is no evidence to support Plaintiff's Due Process claim against Defendants

17cv1335-DMS(BLM)

Jamerson and Rodgers, the Court **RECOMMENDS** that Defendants' motion for summary judgment as to Plaintiff's Due Process claim be **GRANTED**.

### E. Qualified Immunity

As a final, alternative basis for granting summary judgment, Defendants argue that they are entitled to qualified immunity on all of the claims addressed in their motion for summary judgment. MSJ at 22–23. Defendants state:

> Case law does not address the situation where an officer comes to the aide [sic] of another officer engaged in a struggle with an inmate by assisting the inmate to the ground, and using O.C. spray after the inmate continues to struggle. Nor does it hold that an inmate may claim an officer retaliated against an inmate when that inmate was advocating for another. Finally, case law does not provide for liability for allegedly interfering with an inmate's prison appeals.

Id. at 22. As set forth above, the Court is recommending that summary judgment be granted in favor of Defendants Jamerson and Rodgers on Plaintiff's First Amendment and Due Process claims. As a result, there is no need to address qualified immunity on these claims. See Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002) (explaining that "it is unnecessary to further consider whether the officers were on fair notice that their conduct was unlawful" when a Court finds no constitutional violation); Kunkel v. Dill, 2012 WL 761247, at *32 (E.D. Cal. Mar. 7, 2012) (explaining that "[t]here is no need to consider the defense of qualified immunity with respect to the claims that the Court has resolved in Defendant's favor on summary judgment") (citing Wilkie v. Robbins, 551 U.S. 537, 567 (2007) ); Solomon v. Felker, 2015 WL 1469165, at *3 (E. D. Cal. Mar. 30, 2015) (stating that "[b]ecause the undersigned finds that defendants did not violate plaintiff's constitutional rights, there is no need to address the second prong of the qualified immunity test."). The Court will consider whether Defendant Rodgers is entitled to qualified immunity from the excessive force claim.

#### 1. Legal Standard

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Anderson v. Creighton,

17cv1335-DMS(BLM)

483 U.S. 635, 638–40 (1987). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001) (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)), <u>abrogated on other grounds by</u> <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009). This privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." <u>Saucier</u>, 533 U.S. at 200–201 (emphasis in original) (quoting <u>Mitchell</u>, 472 U.S. at 526). Thus, the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." <u>Id.</u> at 201 (quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991) (per curiam)).

In <u>Saucier</u>, the Supreme Court established a two-step inquiry for determining whether an official is entitled to qualified immunity. <u>Pearson</u>, 555 U.S. at 232–33; <u>Saucier</u>, 533 U.S. at 201. First, the Court was directed to consider whether, "[t]aken in the light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right." <u>Saucier</u>, 533 U.S. at 201. If a constitutional right would have been violated were the allegations established, the <u>Saucier</u> Court instructed lower courts to next examine whether the right was clearly established such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Id.</u> at 201–202. If an officer makes a reasonable mistake as to what the law requires—i.e., the right is not clearly established—the officer is entitled to immunity. <u>Id.</u> at 202–203. The Supreme Court subsequently determined that "while the sequence set forth [in <u>Saucier</u>] is often appropriate, it should no longer be regarded as mandatory." <u>Pearson</u>, 555 U.S. at 236. Instead, lower courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Id.</u>

### 2. Analysis

Plaintiff has alleged facts in his complaint that could "make out a violation of a constitutional right." <u>Pearson</u>, 555 U.S. at 232–33. Plaintiff alleges that Rodgers sprayed pepper spray directly into Plaintiff's mouth while Plaintiff was pinned on the ground and that this occurred after Plaintiff told Rodgers that he suffered from lung disease, and that the use of

pepper spray could kill him.  Complaint at 10–13.  Moreover, Plaintiff states that Rodgers used an excessive amount of pepper spray and sprayed it immediately after Jamerson stated "let the Fucker have it."  Id. at 14; see also Hanson Depo. at 23.  The use of pepper spray in the malicious and sadistic manner described by Plaintiff was clearly established as a constitutional violation at the time of this incident such that a reasonable officer would have known he could not use the pepper spray in that manner.  See Furnace v. Sullivan, F.3d 1021, 1028–30 (reversing a grant of summary judgment as to qualified immunity, where pepper spray "was employed without significant provocation from [the prisoner]") (citing Hudson v. McMillian, 503 U.S. 1 (1992)); Clement v. Gomez, 298 F.3d 898, 903–904, 906 (9th Cir. 2002) (explaining that under the Eighth Amendment, use of peppers spray constitutes excessive force if "officials applied the pepper spray maliciously and sadistically for the very purpose of causing harm."). Accordingly, the Court **RECOMMENDS** that Defendants' motion for summary judgment as to qualified immunity for Defendant Rodgers on the excessive force claim be **DENIED**.

## CONCLUSION AND RECOMMENDATION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation, and (2) granting Defendants' motion for summary judgment.  Specifically, the Court recommends that summary judgment be granted as to Plaintiff's Eighth Amendment claim against Defendants Jamerson and Rodgers on the ground that Plaintiff failed to properly exhaust the claim, and as to Plaintiff's First Amendment and Due Process claims against Defendants Jamerson and Rodgers on the ground that there is not a genuine dispute of material fact as to either claim.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **April 12, 2019**.  The document should be captioned "Objections to Report and Recommendation."

///

///

///

///

17cv1335-DMS(BLM)

1      **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court

2 and served on all parties no later than **May 3, 2019**.  The parties are advised that failure to file

3 objections within the specified time may waive the right to raise those objections on appeal of

4 the Court's Order.  See <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998).

5      **IT IS SO ORDERED**.

6

7 Dated:  3/15/2019

8                       Hon. Barbara L. Major
                      United States Magistrate Judge

17cv1335-DMS(BLM)